Okay, we are now recording. Hear ye, hear ye, this Honorable Appellate Court for the 2nd Judicial District is now in session. The Honorable Dan E. Jorgensen presiding. Your Honors, the first case on the docket this morning is 2-21-0371, the people of the state of Illinois, Plaintiff Abilie v. Deontay House, Defendant Appellant. Arguing on behalf of the Appellant, Ms. Anna C. Carlozzi. Arguing on behalf of the Appellee, Ms. Leslie Martin. Alright, are both sides ready to proceed? Yes. Yes, Your Honor. Okay, then we may proceed when you're ready. Good morning, Riders. Again, for the record, Anna Carlozzi with the Office of the State Appellate Defender on behalf of Deontay House. The question posed in this case is a simple one. Did Deontay House understand how his pre-plea custody credit would be applied to his sentence? The answer here is also a simple one. No, and a dispassionate read of the record reveals this. It also reveals that Mr. House's number one concern when he pled guilty was his pre-plea credit and how that would be applied to his sentence. Shortly, in your briefs, you set out the discussion at the trial or at the hearing and the transcript at the hearing. I believe it was you that set that out. Yes, and at the hearing on the plea, at the sentencing hearing, or at his plea hearing, he seemed to understand the judge said he's receiving credit for 1,052 actual days. I think the state said that. I can't be any more clear. And the court asked the defendant, does that answer your question? And he said, yes. Yes, Your Honor. So at the plea hearing, he seemed pretty clear at that point that he understood the number of days he was going to get. Were we looking at his subjective understanding of what was going on? And is that what we should be looking at here? Well, Mr. House understood that he spent 1,052 days in custody before he pled guilty. And so that's why when the state said he's getting credit for 1,052 actual days, Mr. House understood that that meant that he spent 1,052 actual days in custody. What he did not, what he was confused about was how those 1,052 days were going to be applied to his sentence because he thought that they were going to be applied to his sentence day for day. And so this is his subjective belief, but there are objective circumstances explaining why or showing that his subjective beliefs was understandable. His subjective misunderstanding, I guess, was understandable in this case. So what you're relying on here is ineffective assistance of counsel. Basically, I see throughout your, your brief, you have the two prong standard that you have to show us in Strickland, which is was the conduct of the attorney basically and prejudice. Tell us how you are going to prove that to your honors prejudice or ineffective assistance. I'm sorry. Well, either. Um, well, so, in this case, I'm at the hearing on his motion to vacate. Mr. House did testify that his attorney told him he was going to get day for day credit. He testified. I took the time, meaning he pled guilty, because that's what he meaning his counsel told me. He said, you're going to get day for day. And so, Mr. House's attorney told him he was going to get day for day credit. Um, and the, according to Mr. House, did the attorney ever admit or say yeah that's what I told him. He did not. He was not called to testify at the hearing on the motion, but I'm Mr houses misunderstanding is, and the fact that his counsel contributed to his misunderstanding is supported by the plea transcripts, because during the plea hearing his attorney confirmed that yes his credit was going to be day for day. So Mr. House said, Your Honor Yes, I'm just making sure that that credit was day for day. The court said all right now is that, and then his attorney said 1052 actual days, right court said, that's what it's been represented, Mr House said credit for day for day right, the court said yeah correct. And then, Mr houses attorney said yes sir. When the court asked that and so again this is also why the state attempting to clarify that Mr houses receiving 1052 actual days was not actually clarifying, because it's clear that Mr house was in was told by his attorney that he was going to get credit for 1052 actual days, but also his attorney told him that those days we're going to be credited day for day. Where's the prejudice. Um, it. The prejudice lies in the fact that this was Mr houses number one concern while he was sleeping guilty. Um, he asked the question not once or twice he asked it. At the very beginning obviously and then after his fee was accepted. And so, um, that shows that this was one of his number one priorities was one of the most important factors was how much time was going to be taken off of his ultimate sentence, based on the time he had already served. Allow if we allow him to withdraw his plea and proceed to trial. What is he facing. I'm on this charge nine to 40 years. Just one charge, how many charges were dismissed. As a result, this plea charges. Those other running of those other charges consecutive, or they all concurrent. Um, that I don't recall if they were consecutive or concurrent. I believe that they were concurrent. I'd like to just focus your this a little bit more, let's assume for the sake of argument that your client agreed that he had the 1052 actual days, but in his mind, based on on all of this dialogue and what his attorney told him. He thinks he's getting 2000 and some days credit. Okay, that's, let's assume that's a mistake. Where can we look at the totality of what would be reinstated here and conclude that there would have been any rational basis to turn down nine and a half years, given what he was facing. That's the prejudice question and if you would address that. Yeah, I mean, I, well I think it's clear that this was his number one concern. Um, and the record shows that he was unlikely to have pled guilty, if he had known how his pre plea credit was going to be applied. The question is, is there a rational basis for him to have turned down nine and a half, given what he his potential sentence on all five of the charges that were there, and the fact that that council had done a motion to suppress the statement I believe where he basically admitted, it's my stuff and I'm transporting it for cash. Given all of that, where can we rationally conclude that he would have rejected or should have rejected the software and proceeded to trial. I think you can conclude that based on his questions. Um, when, when someone is looking to withdraw their plea based on misrepresentations of counsel on the question isn't. What would be the likelihood of trial or would he have been successful. The question is, would he have pled guilty or not know what you also that's why I talked to you about the two prongs of strictly, you also have to show that there was prejudice, as well the prejudice is that he wouldn't have pled guilty, and that, and I recognize that, um, Mr house got a good deal here. Um, but he may have if he had known the true way the credit was going to be applied to sentence, he may have just favored taking a long shot at trial in. But, but if that's an irrational decision there's no prejudice and that's the point. I mean, he's got a criminal history. He's pretty near the lowest, the minimum of the class x sentencing. And it would be irrational that would be the argument I guess by the state to suggest that he should roll the bones. When he's getting almost the minimum sentence and potentially face a much longer sentence. And it's not just rolling the bones and jumping over a clip knowing what the result is given his admissions and the evidence. So how is it rational to suggest that if he had known he was going to be shorted, some of this credit that people are supposedly believes he's going to get. It's not rational I guess that's the question the prejudice question. Yeah, I mean I think that it's just clear that Mr. House, um, would have preferred to just take his chances at trial. Now is that is his subjective preference. Our analysis or is it what an objective person would rationally do, which one of those two standards are we to employ. Um, I mean I think we have to look at a rational person but also look at Mr. House himself, because it's just clear from the, from the record that when he wasn't, he didn't even seem happy with pleading guilty. To begin with, he stopped the proceeding several times before they he agreed to afford to conference he asked for for one conference, um, he had cycled through several attorneys. And based on my reading of the record it was because all those other attorneys told him that he should be guilty, and it seemed like he didn't want to plead guilty. And so, it's, it's clear that Mr. House would have just favor taking a long shot and in the 2017 Supreme Court case, I think people versus Lee, um, the Supreme, excuse me, the United States Supreme Court, um, found that in that case, the defendant had pled guilty did not realize that, um, he was going to have to be deported from pleading guilty, and the Supreme Court vacated his plea, finding basically that, you know, sure, it is likely that he would have been found guilty but if, if he wanted to, if he favored taking that long shot at trial, because of the ramifications of the deportation, then that was kind of his call and so if, if that defendant was prejudiced in that way, then it seems as if Mr House was also prejudiced here. You know you mentioned that Supreme Court case which is a little different because it was misadvised on a deportation there's a whole host of those cases so we know how the courts going to go on that. How you met you cited it in your brief, how do you distinguish the brown case which are Illinois Supreme Court. Um, I don't remember the facts of the brown case right now. It was basically. Go ahead. I'm sorry. No, I apologize. I don't remember the specific facts of that case right now. Basically what the, the Illinois Supreme Court is talks about in focuses on that prejudice prong in withdrawing of a plea in the brown case they basically said that defendant as justice. Brandon was saying basically had no likelihood of success at a trial so where is the prejudice prong and may affirm the case when the trial court denied the motion to withdraw the plea, I think you're getting hung up. Miss Carlos II on the part of the first prong of Strickland but it is the burden of the defendant to prove both prongs of Strickland, the ineffective assistance, in addition to the prejudice that has to be shown, and I have, I have yet to hear the I mean I know what the prejudices I'm asking you. I mean, the prejudice is that, I mean he, he would not have pled guilty, and he would have taken his chances. How successful do you think he would have been on taking that chance. That's the question. You know, I'm not sure I mean part of his plea was also that he thought his attorney, or excuse me, part of his motion to withdraw his plea focused on various motions he wanted his attorneys to file. You know, I agree that he would not have had great. He might not have had great success at trial on because the evidence seems pretty strong but if someone who had access to the fuller record, you know, please report things like that maybe that I don't have access to. And moreover again the question here is not because that's when it's a question of trial, trial strategy. The question is what would have been the success at trial, when it, when it comes to these consequences of pleading guilty. The question is, would he have pled guilty, and the answer here is a clear no, he would not have pled guilty. Okay, thank you. I have no further questions just justice Brennan anything else. No, thank you. Council, thank you and you will have an opportunity for a rebuttal. Thank you. Are you ready to proceed. Yes, I am your honor. You're ready. Okay, good morning, your honors, and may it please the court. My name is Leslie Martin, and I appear on behalf of the state. We have to be in this case. It is the state's position that the issue on appeal is whether the trial court aired and denying defendants motion to withdraw his guilty plea. But as your honors so astutely honed in on the ineffective assistance of counsel issue. I'll start there first and then get to, you know, another type of analysis that this court could approach the issue upon. However, no matter which analysis this court relies upon the defendant has failed to meet his burden, either way. Speaking specifically to the Strickland standard and the two prongs that your honors mentioned before the first prong which I will call the deficient performance prong. And the second prong being a showing of prejudice. It's the defendants burden. Talking first about the prejudice prong to show that there's a reasonable probability that but for the alleged errors, or in this case, his allegation that his counsel informed him that his pre sentence credit would be doubled would. Because of those alleged errors, he would have insisted on going to trial or stated otherwise that the decision to rejected the plea would have been rational and the defendant has not met that burden. Firstly, a defendant's conclusory allegations that he would have not pleaded guilty. And would have demanded a trial is insufficient to establish present prejudice, and the state sites brown in in our brief to support that position, and here, that's all that we have is defendants own subjective testimony that that's what he would have done. And that's insufficient. Also, we know you're, you're Miss Carlos he relies on the boy decision out of the fifth district. Yes, the fifth district that basically the facts are quite on point with the facts here, and that court found that if the defendant was prejudiced by the defendant wasn't eligible to get good time credit he didn't ever play guilty. How do you distinguish that case. So, but boy does distinguishable from the instant case for two reasons. Firstly, in that case, and as defense counsel mentioned earlier, we don't have in this case, any subpoena from the defendant to produce a testimony from his plea counsel to provide the best and strongest objective evidence of what his counsel told him prior to him, agreeing to plead guilty and in boy, there was testimony from counsel supporting the defendants claims and the fifth district relied upon that objective evidence in finding that the defendant had shown he had been misinformed. And secondly, boy does distinguishable distinguishable because they're according to my recollection of the facts the defendant pled guilty to I believe 18 years, whereas the sentencing range for the offense was between six, and I don't remember what the maximum but the minimum was six years so in essence the court found that he essentially agreed to a sentence 12 years higher than what he could have received had he not pled guilty. And in this case, as your honors have mentioned that defendant here by pleading guilty, he was only pleading guilty to one offense and he was charged with six. And for that one offense that he was sentenced on he received a sentence of nine and a half years, so only six months more than the minimum. And that's, you know, the one of the strongest reasons why the state finds the defendant has failed to show prejudice, and there's also another strong indication from the record that defendant has failed to show that he would have insisted in going to trial and that is the defendants own comments. The trial court noted in its decision. And it's, if your honors are looking for it it's on on pages 451 to about 455 of the record, but the defendant expressed strong apprehension for the state, describing more of the underlying facts when the state was presenting its special basis for the plea because the defendant was, you know, very worried about these underlying facts being published in a public record because he said that this could have put himself or his family in harm's way. So the defendant, you know, gives us himself an understanding of his motivations for accepting the plea in which the state finds that the defendant himself has shown us that he would not have desire to go to trial. If I could just confirm the other charges that were dismissed. They were all concurrent not consecutive correct. Yeah, I'm not I'm not sure you're on it but I believe that may be true. I only asked because it's, I mean, to point out that four or five other charges were dismissed isn't particularly relevant. If they're concurrent and he's pled to a class x with extended sentencing. I mean, he's he has played he has pled to the most time he could potentially plead to in terms of exposure so the dismissal of the other counts isn't changing that dynamic is that fair. I think it is relevant in the sense that we had defendant gone to trial. He could have been convicted on any one of these offenses, or all of them. And, you know, that just adds more variety to the question of what defendant have received a more favorable outcome had he gone to trial and we can't say that I mean nine years was the minimum just for that offense, but there are other classics offenses that you know had other sentencing ranges. But none of them would have had a minimum greater than nine years though correct. Uh, not to my recollection but I don't know what the sentencing ranges work for the other fences, I only know about the one that he pled guilty to, but I think that other things are always relevant to questions about sentencing. Sure. So let me ask this. As it relates to the first prong of Strickland. We do have, you know, Walker was not called so we do have in one sense just the defendant subjective argument, but it's kind of corroborated by the number of times the defendant stopped the plea I mean four or five times. He stopped the plea and according to that's in the record and he says, those times, I think with one exception he's talking about how to calculate this sentencing credit, doesn't that provide some kind of objective corroboration in terms of the defendant subjective understanding. No, Your Honor, the state would argue that that only provides speculation as to what the defendants understanding was, especially given that every time that he had these you know off the record conversations with his counsel. At the point in which the parties came back and the hearing resume there was never any sort of question brought up as to how much pre sentencing credit the defendant would be receiving because, as is the state's present position. It was always clear that the defendant would only be receiving credit for 1052 days. And furthermore, it's the state's position that every time the question of day for day credit was brought up by defendant. It was always an only clarify that 1052 days was the amount of time that the defendant would be receiving. I think it's also, there was at one point when the judge said something I think I'm as close he had cited that or the judge said something. Yeah, about day for day. Yes, and Your Honors, I would also like to point out that the, the meaning of day for day in this context, simply meant that for every day that the defendant had spent in in county jail, you know, leading up to his plea that that would have been counted as one day counted towards his sentence served in the Department of Correction so you would concede, though, that if somebody has some familiarity with the sentencing schemes in Illinois and this defendant was not a newbie, if you will, that day for day is a term of art, meaning, essentially, I'm only going to have to serve half my time or and his interpretation here for misinterpretation I'm going to get double time. I mean day for day is a term of art, it's not, we're not going to look to the dictionary for what it means. But Your Honor the state's not conceding that point in this case, I think, as one of your, I can't remember which person mentioned before but it's the totality of the circumstances that matter here, and where there were clear instructions or instructions is the wrong word but clear, a clear summary by the state of, you know, all of the terms that went along with this plea agreement, which only included 1052 days and defendant, when he was asked by the trial court had he been promised anything other than what the state had summarize the defendant said no. He also was asked if he understand and the defendant said yes. So, is the defendant subjective understanding what we go by here. No, it is an objective understanding in this case that we go by. How do you figure out day for day. So your honors, um, you know, the sentencing and the credits and all of those numbers. You know, that's why in the state's brief I made a point of talking about this as being a collateral consequence because the only reason that we're just even discussing this appeal is to the extent that the defendant is alleging that his plea counsel misinformed him about such collateral consequence, but otherwise anything related to a collateral consequence, being good time credit or anything of the like, was never something that the state, the trial court or anyone at this point in time could have guaranteed the defendant because those are all things within the powers of the Department of Justice. Here's my question, if you're going to figure out day for day you start with the actual days and then you multiply it by two. So, repeatedly telling him that that was the actual days that really didn't impact the total number of day for day if that's objectively, we look at what the trial court says to him and credit day for day right and the trial court says yes, correct. So, we keep telling him it's actual days, and he's not disputing that he's just saying yeah I get 1000 days in day for day means we're going to double it. And as Justice Brennan said that's a word of art if you've been through the system you know exactly what day for day means. Your Honor, I think what is particularly helpful for that kind of question is the fact that the state also clarified you know I think the state did have some sense that, you know, there was a need to further clarify and the state clarified. After I can't remember exactly which incident but that the defendant would be serving his sentence at 75% and not 50. So I think that also, you know, clears up any room for misunderstanding there. Going in that it was 75% that he was going to serve from that point forward, his issue is that for the time I'd already served, I was going to get day for day. And when the state clarifies. He says again I want to make sure that it's 100, excuse me 1052 actual days. Again, nobody talks about day for day. Your Honor, but I would also point out that no one ever mentioned anything about 2000, you know, 104 days, and also in this case, you know it's the defendant's burden to prove that that's what that his misinterpretation was objectively reasonable, and we don't have anything in this case, whether that's plea counsel's testimony. The the trial transcripts are don't clearly reflect that as I've mentioned before, nor does defendant subjective testimony, you know, prove that and I would also like to point out as a trial court found and kind of made some sort of credibility determination and this is why the state's position is actually that the issue isn't per se one of ineffective assistance of counsel ineffective assistance of counsel is one layer of this issue but the real issue is whether the trial court aired in denying defendants motion to grant motion to withdraw his guilty plea that's the issue that defense counsel lays out in their brief with that being the issue on appeal, the standard of review is actually one of abusive discretion. And therefore we can rely upon the credibility findings of the trial court, in which they found that you know defendants accusation regarding ineffective assistance of counsel was unfounded. They found that defendants later allegations that he was pressured by his counsel into accepting his guilty plea were unfounded where prior to the plea being accepted and being asked by the trial court. Did he make this voluntary voluntarily the defendant said yes, and even the defendants comment that because of diabetes and covert that he was under some kind of, you know, medical illness or inability to fully understand, whereas, where the defendant said prior to his plea being accepted that, you know, he was having no, no impact to his ability to comprehend, but later said that he was the trial court found that all unfounded and we can rely upon those finding credibility findings of the trial court where it was the same trial court judge present for the plea hearings, as it was for the hearing on the motion to withdraw the guilty plea. Now what did the minimus show that. So you're talking about the judgment order that he would receive 973 days for credit for time served in the King County Jail and 79 days for lacrosse county jail which amounts to 1052 days. So once again, 1052 days is the only you know number of days that was ever mentioned by any party and the defendant never mentioned 2104 days. It's the defendants burden and defendant has not met his burden and defendant was shown that order, correct. I can't recall specifically whether the defendant was shown this order, it certainly isn't the common law record but we have numerous instances, as your honors are aware of the transcript from the plea hearing in which the defendant was repeatedly told about 1052 days and he even admitted himself that he had heard that amount. So we have no reason here to believe that the defendant could have objectively formed any misinterpretation, excuse me, of what his pre sentencing credit would be this is a collateral consequence that we're even discussing and is only relevant to the extent defendant has proven that that his counsel misinformed him. I see my time has expired. So, to the extent, your honors have any additional questions, I just want to affirm the judgment of the trial court below.  Justice Brennan. No, thank you. Thank you very much counsel. And are you ready to proceed with your rebuttal. Yes. I'm just a couple points. Um, I'd like to point out in the state's order. First I'd like to point out that in the state's brief in the state's response brief. It argued that this was a de novo review, because the state did, or excuse me the court did order issue an order granting the state's motion for directed verdict after the hearing on the motion to withdraw, but the court issued another order in which it dismissed Mr houses petition. And in that order he said he admits that he incorrectly advised Mr house. The court said, when the defendant asked whether he was getting credit for day for day, I stated that was my understanding of the plea. So he admits that he, he misinformed Mr house about how his credit was going to be applied. And then, at every other point in the order. It says that someone clarified, or that Mr house agreed that his sentence would have to be served at 75%. And so no one ever, even in the court's order it's clear that no one ever actually clarified for Mr house that he was not going to get day for day credit, the easiest way to clarify that would have been to say, why are we talking about day for day credit day for day credit means 50% I want to make sure we're on the same page. We all agree. Yeah, there's no such thing as day for day credit for time you've already served, you get a sentence, and it's either served day for day, which means 50%, roughly, or in this case 75% so we take nine and a half years, we get 75% of it we get a certain amount of days. After that the defendant gets as the judge told him credit for 1052 actual days. That is a correct statement, objectively, would you agree with that. Yes, but I think that the way you explained it is much, much more clear than the way that the court explained it right, I would agree with that, but effectively the length well, respectively. But objectively the language that the judge ultimately used when there was an attempt to clarify and more particularly the language of the state, it was correct. Is that fair. He Mr house was getting credit for 1052 days and he he said that he understood that that was the credit, what he did not understand is how it applied. And he, I mean, I was misunderstanding. That's his subjective misunderstanding. Show me a case that says, if it's his subjective misunderstanding, then he should be allowed to withdraw his plea. I don't have a case that says specifically that off the top of my head but what I'm saying is that there are objective circumstances that support that why he had this subjective misunderstanding. Well, let me ask you this. I'm in this transcript, he, he state the judge says, Is that correct Mr Merkel I'm assuming that's the prosecutor, and the state says judge, he's receiving credit for 1052 actual days. I can't be anymore. I don't know that there's any way to put it any more clearly than that. Also then fast forward to the end of the hearing at. I think the record is at 216, where the judge shows him the form and the defendant is to serve the following periods of incarceration, and the form shows the Department of Corrections, nine and a half years under that it also indicates credit for time served 1052 actual days, the judge showed that form to the defendant and open court and asked the defendant, if his name appeared on that for me said yes it did. So, I mean, how much clearer. Can anyone be with respect to the number of days regardless of had in his mind that he was going to get doubled. Who was like, Well, his attorney misled him, because that's that's part of it, he testified that his attorney told him he was going to get day for day. When his attorney told him that the court, and the prosecutor. It seems made clear that he was going to get credit for 1052 actual days. What made him think he didn't shouldn't believe that. Well, I think that he understood he was that his credit was out 1052 days he did not understand how that credit was going to be applied. And so he understood that those days that those that that was the amount of days he spent in custody, but he just did not, he thought that because he was going to get day for day that it was going to be doubled. Well he thought wrong so then what do we do allow him to withdraw his plea, or, you know, reverse the court's order denying his motion, because it's clear that I mean that he asked the question the first time, and that question obviously before the factual basis and all that, it's clear that his question was not answered because he asked the same question again, and they, the parties answered it in the same way, and his counsel again, um, gave him a misrepresentation. At some point, I don't know if it was during the plea on one of the occasions that they went off the record, or if it was before the plea. And that's shown by the fact that his attorney agreed on the record that it was day for day. Um, I know that I'm out of time but I did want to touch on the prejudice. Wrong, quickly, um, because Brown does say, um, when the claim is related to the client's understanding of the consequences of guilty plea. The review report must consider the circumstances surrounding the plea, including assessing the consequences of conviction by either trial or plea. Right, so, um, and yes Mr house was on this offense was facing. You know, up to 40 years in prison but he had other offenses that had lower minimums than nine. Um, and so, taking all the circumstances surrounding the plea the fact that he did not seem too thrilled to be pleading guilty to begin with, that he stopped the about how his credit was going to be applied. Um, all of those circumstances, even though he could have been facing more time if he had gone to trial, all those circumstances support the fact that he probably would have not agreed to be guilty he would have insisted on going to trial and he would have, he would have just taken that long shot. Um, and if there are no other questions, we ask that this report, reverse the trial courts denial of Mr houses motion, and I'm going to vacate his plea. Any additional questions justice drastic. Justice Brennan, just one. Does the record suggest any reason for not subpoenaing the defense attorney, you know, evasion of service difficulty. He died. Is there any suggestion why poster post plea council did not attempt to do that. In the record. Um, there's not any suggestion why I would just point out that Mr. Walker was a private attorney I don't know if he normally practices in King County. Like I said, I know that Mr. House kind of cycled through a couple private attorneys, so I'm not. There's no reasoning in the record for why counsel did not call Mr. Walker. I know there's no question. Post, please, counsel. Thank you. I don't have any additional questions either we thank both counsel for extraordinary arguments this morning and we will issue a resolution in due course. Thank you both very much. Thank you for honor.